**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

(1) ERIC J. SALLEE, )
(2) CATHERINE SALLEE, individually )
and as husband and wife, )
 )
        **Plaintiffs,** )
 )
v. ) Case No. 11-CV-212-TCK-PJC
 )
(1) L.B. WHITE TRUCKING, INC., )
(2) ALLEN ERNEST KESSELER,[1] and )
(3) NATIONWIDE MUTUAL INSURANCE )
COMPANY, )
 )
 )
        **Defendants.** )

## OPINION AND ORDER

Before the Court are Plaintiffs' Motion to Amend Complaint (Doc. 15); Plaintiffs' Motion for Leave to Supplement Motion to Amend Complaint (Doc. 36); Defendant Nationwide Mutual Insurance Company's Motion for Summary Judgment (Doc. 16); and Defendant Nationwide Mutual Insurance Company's Motion for Protective Order (Doc. 17).

**I.     Factual Background**

Plaintiffs Eric Sallee and Catherine Sallee brought this action in the District Court for Tulsa County, Oklahoma. In their Petition, Plaintiffs allege: (1) Plaintiff Eric Sallee and Defendant Allen Ernest Kessler ("Kessler") had a motor vehicle accident on December 17, 2010; (2) the accident was caused by Kessler's negligence; (3) at the time of the collision, Kessler was operating a semi-tractor and trailer; (4) at the time of the collision, Kessler was an employee, agent, representative, or owner of Defendant L.B. White Trucking, Inc. ("L.B. White") and was acting in the scope of his

---

[1] All parties agree that the proper spelling of Kesseler is Kessler.

employment; and (5) Defendant Nationwide Mutual Insurance Company ("Nationwide") insured L.B. White and Kessler at the time of the collision.

Plaintiffs seek to amend their Petition to (1) assert claims against Bryan Koehler ("Koehler"), a party identified in discovery who allegedly owned and leased to J.B. White the semi-tractor and trailer driven by Kessler, for direct negligence and for liability based on Koehler's status as a joint venturer with J.B. White; (2) add a loss of parental consortium claim brought by Plaintiffs' two minor children; and (3) add property damage as part of their alleged damages. Plaintiffs did not attach their proposed amended pleading but instead set forth in its motion those facts that it intends to assert in an amended pleading. Defendants oppose amendment on grounds of futility. Defendant Nationwide moves for summary judgment and for a stay of discovery against it pending the outcome of its motion.

**II.     Motion to Amend**

Federal Rule of Civil Procedure 15(a)(2) ("Rule 15"), which governs the motion to amend, provides that a court should "freely give leave when justice so requires." Courts generally deny leave to amend only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety*, *City, and Cnty. of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005) (quotation omitted). In this case, Defendants urge the Court to deny the motion to amend on grounds of futility. "A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason . . . ." *E.SPIRE Commc'ns, Inc. v. N.M. Pub. Reg. Comm'n*, 392 F.3d 1204, 1211 (10th Cir. 2004). Thus, a court may generally deny leave to amend where the proposed amendments fail to state a claim for relief

pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) ("The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim . . . .").

The Rule 12(b)(6) standard requires the Court to consider whether the proposed amended complaint "contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)). A plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

3

### A. Koehler - Direct Negligence

Defendants did not offer any argument against Plaintiffs' asserting a direct cause of action for negligence against Koehler, and the motion was timely filed. Therefore, this requested amendment shall be permitted.

### B. Koehler - Joint Venturer

Defendants oppose the addition of any claim against Koehler based on his status as a joint venturer with J.B. White, arguing that Plaintiffs' proposed allegations do not satisfy the elements of joint venturer liability under Kansas law.[2] "A joint adventure is defined in general terms to be a special combination of two or more persons devoted to a specific enterprise in which profit is jointly sought without actual partnership or corporate designation. The relationship may arise from express contractual provisions or out of acts and conduct." *Terra Venture, Inc. v. JDN Real Estate Overland Park, L.P.*, 443 F.3d 1240, 1245 (10th Cir. 2006) (applying Kansas law). Under Kansas law, the factors for determining whether a joint venture exists are:

> "(1) the joint ownership and control of property; (2) the sharing of expenses, profits, and losses, and having and exercising some voice in determining the division of net earnings; (3) a community of control over and active participation in the management and direction of the business enterprise; (4) the intention of the parties, express or implied; and (5) the fixing of salaries by joint agreement."

*Id.* (quoting *Model Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 596 P.2d 816, 823 (Kan. 1979)).

In this case, Plaintiff seeks to allege that Koehler, as lessee, (1) exercised ownership and/or control of the vehicle (*see* Mot. to Amend 1), (2) had the right to decide who would drive the vehicle

---

[2] For purposes of this motion, the parties agree that Kansas law applies to the joint venture issue because the lease between J.B. White and Koehler was executed by two Kansas residents and provides for performance of the lease to take place in Kansas.

(*see* Mot. for Leave to Supp. Mot. to Amend 1); (3) approved Kessler for operation of the vehicle (*see id*); (4) had responsibility for maintenance of the truck (*see* Reply in Support of Mot. to Amend 4); and (5) shared profits with J.B. White (*see id.* 4). The proposed allegations are sufficient to state a plausible claim that Koehler may be liable to Plaintiffs as a joint venturer with J.B. White. Such allegations, if proven, would demonstrate that at least some of the relevant factors weigh in favor of joint venturer status.

### C. Parental Consortium

Oklahoma common law permits a "cause of action for the permanent loss of parental consortium resulting from injuries tortiously inflicted on their parent by a third person." *Williams v. Hook*, 804 P.2d 1131, 1138 (Okla. 1990).[3] Defendants argue that any claim for parental consortium in this case would be futile because *Williams* requires a "permanent, debilitating disability to the parent equating to death." (Resp. to Mot. to Amend 4.) Defendants' argument is derived from the following statement in *Williams*:

> [W]e are hard pressed to find a distinction between allowing children to recover for the loss of consortium a child suffers through the actual death of a parent under 12 O.S.1981 § 1053 and refusing to allow recovery for the loss of consortium when for all practical purposes the parent is in a state which equates death.

*Williams*, 804 P.2d at 1136 (footnote omitted).

Although Oklahoma law is less than clear, the Court is not persuaded at this stage of the proceedings that a death-like or vegetative state of the parent is required for recovery. In addition to the above passage, the *Williams* court also reasoned:

---

[3] The parties agree that Oklahoma law applies to the parental consortium issue, presumably because the accident and injuries occurred in Oklahoma.

> Because a child has to deal with the day-to-day realities of the disabilities of a *severely injured* parent, the child may suffer more intense and enduring mental anguish and suffering than would be the case if the parent died. Children whose parents suffer *extensive injuries*, are deprived of any further parent-child exchange throughout the remainder of their childhood years, and lack an essential role model.

*Id.* (footnotes omitted and emphasis added). This indicates that something less than a death-like state may be permissible. Further, the Oklahoma Uniform Jury Instructions indicate that only a permanent injury is required:

> Parental consortium is defined as the love, care, companionship, and guidance given by a parent to a minor child. For [Plaintiff] to recover on this claim you must find all the following:
> A. [Parent] is entitled to recover damages from [Defendant] for [his/her] injuries;
> *B. [Parent]'s injury is permanent.*
> C. [Plaintiff] was the minor [or incapacitated dependent] child of [Parent] at the time [Parent] sustained the injuries.
> D. As result of the injuries sustained by [Parent], [Plaintiff] sustained a loss of parental consortium.

OUJI 4.7 (emphasis added). The Oklahoma Supreme Court recently, but without explanation, described the cause of action as one extended to children "of a totally disabled parent." *Shull v. Reid*, 258 P.3d 521, 525 (Okla. 2011).

Based on the above, the Court cannot derive a clear rule that would allow it to dismiss Plaintiffs' claim based on failure to allege injuries so debilitating as to equate to death. The Court finds that the factual content of Plaintiffs' allegations – namely, a vehicle accident with a semi-tractor trailer – is sufficient to state a plausible claim that Eric Sallee was permanently and severely injured.

### D. Property Damage

Defendants do not oppose this proposed amendment and it shall be permitted.

6

**III.    Motion for Summary Judgment**

    **A.    Oklahoma's Statutory and Administrative Scheme[4]**

The Oklahoma Motor Carrier Act of 1995, Okla. Stat. tit. 47, § 230.21-230.34b ("OMCA"), regulates transportation by "motor carriers," which is defined as "any person . . . operating upon any public highway[5] for the transportation of persons or property for compensation or for hire or for commercial purposes, and not operating exclusively within the limits of an incorporated city or town within [Oklahoma]." *Id.* § 230.23(6) (footnote added).[6] The statute makes it unlawful for "any motor carrier to operate or furnish service *within* [Oklahoma] without first having obtained from the [Oklahoma Corporation Commission ("OCC")] a license." *Id.* § 230.28 (emphasis added).[7] A "license" is defined as "the license issued under authority of the laws of the State of Oklahoma to motor carriers." *Id.* § 230.23(3). The statute sets forth certain fee requirements for obtaining a license, *see id.* § 230.27 (requiring $100.00 fee), and certain insurance or bond requirements for obtaining a license, *see id.* § 230.30 (requiring carriers to file a liability insurance policy with the OCC). The administrative regulations set forth more detailed license application requirements. *See* Okla. Admin. Code § 165:30-3-1. Such regulations state that "[n]o *intrastate* motor carrier shall operate upon any [Oklahoma road] without first obtaining a license." The word "intrastate" is not

---

    [4] The parties agree that Oklahoma law governs the issues raised in Nationwide's motion for summary judgment.

    [5] "Public highway" is defined as "every public street, road or highway or thoroughfare in [Oklahoma] . . . ." *Id.* § 230.23(11).

    [6] It is undisputed that J.B. White fit the definition of "motor carrier" at the time of the accident. The regulation also applies to "private carriers." This Order does not address any rules applicable to private carriers, and the Court has, in its quotations, omitted portions of the statutes and regulations relevant to private carriers.

    [7] The OCC oversees and regulates the OMCA. *See id.* § 230.24.

7

used in the statute explaining when an Oklahoma license is required, although the statute uses the language "operate or furnish service within Oklahoma." *See* Okla. Stat. tit. 47, § 230.28.

Oklahoma law also authorizes the OCC to "promulgate rules necessary to enable [Oklahoma] to participate in the Unified Carrier Registration System for interstate motor carriers . . . and interstate motor carriers holding intrastate authority as set forth in the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users." *Id.* § 162.1.[8] The OCC has promulgated such rules as follows:

> (a) The Commission shall comply with the provisions of the procedures adopted by the UCR Board.
> (b) An interstate motor carrier, freight forwarder, leasing company or broker subject to UCR shall be known as a UCRant.
> (c) A UCRant shall pay its applicable UCR fee to its base state, in accordance with the UCR procedures.
> (d) Failure of a UCRant to pay its applicable UCR fee to its base state shall subject the UCRant to contempt complaint proceedings.
> (e) Interstate carriers[,]excluding vehicles operating intrastate only from the UCR fee[,] must comply with 165:30-10-45.

*Id.* § 165:30-12-1 (alterations added).[9] Section 165:30-10-45 requires, in relevant part, that an "*interstate* motor carrier with valid *intrastate* authority issued pursuant to OAC 165:30-3 . . . must maintain liability insurance on file as prescribed in OAC 165:30-3-11 . . ., to retain its *intrastate* authority." Section 165:30-3-11 requires, in relevant part:

> (a) No motor carrier *whose principal place of business is in Oklahoma* shall conduct any operations in this State unless such operations are covered by a valid primary bond or insurance policy issued by an insurer authorized or approved by the Oklahoma Insurance Department. *No motor carrier whose principal place of business is not in Oklahoma shall conduct any operations in this State unless such*

---

[8] The Unified Carrier Registration System ("UCRS") was formerly referred to in the statute as the "single state registration system." *See id.* § 162.1 (1993).

[9] The Court has inserted the commas because it is the only logical reading of the sentence.

8

> *operations are covered by a valid bond or insurance policy issued by an insurer licensed or approved by the insurance regulatory authority of the state of their principal place of business or the Oklahoma Insurance Department.* No holder of an authority shall conduct any operations before a proper certificate of insurance(s) has been filed with, and approved by the Commission. A surety bond containing all obligations provided by this Section may be substituted for an insurance policy.
>
> (b) *Every motor carrier shall file with, and must be approved by, the Commission a certificate on Form E or G certifying that there is in effect a valid bond or insurance policy covering operations in Oklahoma to protect the public against loss of life, injury, property damage, and including environmental restoration in minimum amounts, of combined single limits, for bodily injuries to, or death of all persons injured or killed in any accident, and loss or damage in any one accident to property or others* (excluding cargo). Minimum liability insurance limits as set forth in 49 CFR Part 387 shall also be applicable to intrastate operations unless otherwise specified in subsections (b)(1)-(4).

*Id.* § 165:30-3-11 (emphasis added).

Relevant to the issues presented, the Court gleans the following from the above statutes and regulations. A motor carrier with a principal place of business other than Oklahoma may: (1) conduct intrastate commerce in Oklahoma, so long as it has an Oklahoma license (which requires filing a copy of its liability insurance policy with the OCC), (2) conduct interstate commerce in Oklahoma pursuant to the UCRS, so long as it has (a) registered and paid fees in its home state, (b) filed a Form E Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance ("Form E") with the OCC, and (c) such insurer is approved by its home state's insurance regulatory agency or the Oklahoma Insurance Department.

### B. Undisputed Facts

The relevant facts are undisputed. L.B. White is a Kansas corporation with its principal place of business in Kansas. On June 30, 2004, the U.S. Department of Transportation ("DOT") issued Certificate MC 345438 C, which evidences L.B. White's "authority to engage in transportation as a common carrier of property (except household goods) by motor vehicle in

interstate and foreign commerce." (Mot. for Summ. J., at Ex. 2.) On July 22, 2004, J.B. White filed an Application for Intrastate Motor Carrier License with the OCC, listing its Interstate Certificate number as 345438 and its state of federal registration as Kansas. (*Id.* at Ex. 1.) On August 18, 2004, the OCC issued Order No. 493682, which orders that L.B. White "be issued a license to operate as a for-hire motor carrier between points in Oklahoma in intrastate commerce, transporting" property, except household goods. (*Id.* at Ex. 3.) Although it appears to be statutorily required in order to obtain an Oklahoma license, the actual file-stamped copy of the insurance policy between Nationwide and L.B. White is not part of the record. On August 24, 2004, L.B. White filed a Form E with the OCC. Form E lists Nationwide as L.B. White's insurer and references insurance policy number ACP BA 723093275.

On December 17, 2010, following the accident allegedly causing Eric Sallee's injuries, Oklahoma Highway Patrolman Terry Shiever filled out a Driver/Vehicle Examination Report ("Report"). The Report indicates that, at the time of the accident, Kessler was transporting a shipment of soybeans from Geuda Springs, Kansas to Catoosa, Oklahoma. Thus, the soybeans were traveling in interstate commerce from Kansas to Oklahoma.

### C. Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id*. However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint

10

but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

### D. Analysis

Nationwide argues that it is entitled to summary judgment because, based on the above undisputed facts, the OMCA does not permit a direct suit against it. Absent a statutory directive, a plaintiff does not have a right "to bring a direct action against the insurer of an alleged tortfeasor." *Daigle v. Hamilton*, 782 P.2d 1379, 1383 (Okla. 1989). Plaintiffs contend that Section 230.30(A) of the OMCA is the statutory directive permitting Nationwide to be sued jointly with J.B. White in this case. Such statute provides:

> A. No license shall be issued by the Commission to any carrier until after the carrier shall have filed with the Commission a liability insurance policy or bond covering public liability and property damage, issued by some insurance or bonding company or insurance carrier authorized pursuant to this section and which has complied with all of the requirements of the Commission, which bond or policy shall be approved by the Commission, and shall be in a sum and amount as fixed by a proper order of the Commission; and the liability and property damage insurance policy or bond *shall bind the obligor thereunder to make compensation for injuries to, or death of, persons, and loss or damage to property, resulting from the operation of any carrier for which the carrier is legally liable.* A copy of the policy or bond shall be filed with the Commission, and, *after judgment against the carrier for any damage, the injured party may maintain an action upon the policy or bond to recover the same, and shall be a proper party to maintain such action.*
> . . .

Okla. Stat. tit. 47, § 230.30(A) (emphasis added). Despite the "after judgment" language in the last sentence, the statute has been consistently interpreted by the Oklahoma Supreme Court and the Tenth Circuit as allowing a joint action against the motor carrier and its insured in a single lawsuit. *See Daigle*, 782 P.2d at 1381 (explaining that the Oklahoma Supreme Court recognizes "joint

11

actions against motor carriers and their insurers under [the] statute requiring the carrier to file a liability insurance policy . . . with the Corporation Commission before a permit to do business in Oklahoma is issued") (citing *Enders v. Longmire*, 67 P.2d 12 (1937)); *see also Blanke v. Alexander*, 152 F.3d 1224, 1230 (10th Cir. 1998) (concluding that joinder of motor carrier's insurer and reference thereto throughout the trial was proper because a joint action was authorized by Oklahoma statutory law); *Mize v. Liberty Mut. Ins. Co.*, 393 F. Supp. 2d 1223, 1226 (W.D. Okla. 2005) ("The Oklahoma Supreme Court has long held that Okla. Stat. tit. 47, § 230.30, formerly Okla. Stat. tit. 47, § 169, creates a direct cause of action by a person injured by operation of a motor carrier against the motor carrier's insurer, provided of course that the motor carrier is required to be insured under the statute.").

The motor carrier's insurer is directly liable to the injured party "by reason of the statute," and not by reason of its insurance policy or bond. *Daigle*, 782 P.2d at 1381; *see Blanke*, 152 F.3d at 1230. The Oklahoma Supreme Court has explained the theory behind allowing direct actions against a motor carrier's insurer:

> [T]he insurer under a compulsory insurance policy may be joined as a defendant with the insured in an action by an injured third person, generally, on the theory that under statutes requiring and controlling compulsory insurance, a direct or joint right is created in favor of the injured person against both the insured and the insurer. And our Court has on many occasions held that where a motorist is required by statute or ordinance to file a policy of liability insurance to protect the interests of the public or injured persons, though not expressly giving to them a direct benefit under the policy, the joinder of the insurer and the insured in the same action is permitted.

*Tidmore v. Fullman*, 646 P.2d 1278, 1281-82 (Okla. 1982). Thus, joinder of the motor carrier's insurer is generally permitted because: (1) the compulsory nature of the insurance creates a right in

12

favor of the insured; and/or (2) the public filing of the insurance policy creates a right in favor of the insured.[10]

Nationwide argues that a recent decision of the Oklahoma Court of Civil Appeals, *Fierro v. Lincoln General Insurance Company*, 217 P.3d 158 (Okla. Civ. App. 2009), indicates that it may not be sued directly because L.B. White was engaged in *interstate* transportation (Kansas to Oklahoma) at the time of the accident.[11] In *Fierro*, the court phrased the issue on appeal as "whether the [OMCA] permits a direct cause of action against an *interstate* motor carrier's liability insurer, when the interstate motor carrier is properly registered in its home state." *Fierro*, 217 P.3d at 159 (emphasis added). In *Fierro*, the motor carrier involved in the Oklahoma accident did not and had never "operate[d] pursuant to an Oklahoma Motor Carrier License." *Id.* at 160. Instead, the motor carrier was operating in Oklahoma solely pursuant to the UCRS.[12] The court held that § 230.30 did not apply to the insurer because its insured was an "interstate motor carrier" that "does not operate pursuant to an Oklahoma Motor Carrier License."

---

[10] In *Daigle*, the Oklahoma Supreme Court declined to extend this reasoning in *Tidmore* to a statutory indemnification requirement. *See id.* at 1383 (distinguishing motor carrier statutory requirement from statutory requirement at issue because it did not have express language authorizing action against the insurer and because the law "require[d] motorists to obtain security in the nature of indemnification to cover losses incurred by others as a result of the motorist's negligence").

[11] Prior to *Fierro*, the Court is not aware of any cases specifically discussing the interstate/intrastate discussion in determining whether the insurer may be directly sued under § 230.30(A).

[12] The UCRS is referred to in *Fierro* as the "single state system," *see id.* at 160, or the "single state registration system," *see id.* at 161 (Adams, J., concurring).

This case presents strikingly different facts than *Fierro* because J.B. White has an Oklahoma license and presumably has its insurance policy on file with the OCC.[13] Nonetheless, Nationwide argues that, at the time of the accident, J.B. White was necessarily operating pursuant to its interstate license because it was transporting goods from Kansas to Oklahoma. The Court declines to extend *Fierro*'s protection to an insurer whose insured holds an Oklahoma license and an interstate license, even where the evidence shows that goods were being transported interstate at the time of the accident. The Court does so for three reasons. First, *Fierro* is a decision of the Oklahoma Court of Civil Appeals, is not binding precedent, and has not been cited by any other court. Oklahoma Supreme Court and Tenth Circuit precedent have not expressly discussed this interstate/intrastate distinction, even where the insured was an "interstate" carrier. *See, e.g.*, *Mize*, 393 F. Supp. 2d at 1222 (denying motion to dismiss where insured motor carrier was UPS, which the court described as an "interstate motor carrier" bearing U.S. DOT Nos. 21800 and 24976).

Second, the *Fierro*'s court's reasoning regarding § 230.30 is not persuasive. In totality, it provides:

> Therefore, we turn to § 230 to determine whether there exists a direct action against a defendant motor carrier's insurer. We find the rule from *Daigle* must guide us in this determination. There was a compulsory insurance requirement, but that requirement was satisfied by the submission of the home state's policy. Fierro has not shown an infraction by the insurer sufficient to make it a defendant pursuant to Oklahoma's Motor Carrier Act of 1995. Oklahoma takes part in the single state system, 47 O.S.2001 § 162.1, that is, where interstate motor carriers register and insure in their home states. Section 230.30 plainly states that ". . . after judgment against the carrier for any damage, the injured party may maintain an action upon the policy or bond to recover the same, and shall be a proper party to maintain such action." 47 O.S.2001 § 230.30(A). "The reasons given for the prohibition [defendant's insurer cannot be directly sued by a plaintiff], besides statutory

---

[13] Although only Form E is part of the record, the statutory scheme appears to require filing of the actual insurance policy in order to obtain an Oklahoma license.

> directive, include policy, prohibition by judicial decision, lack of privity between the injured plaintiff and the insurer, misjoinder of the tort action and the action on the contract, and the enforcement of the "no-action" clause in the policy."

*Id.* at 160-61. The Court has reviewed *Daigle* and is unclear as to what precise "rule" and/or what type of "infraction" the court is referring. The court's reliance upon the statutory "after judgment" language, which reasoning would potentially extend to all insurers regardless of whether they held an Oklahoma license, is clearly contrary to Oklahoma Supreme Court and Tenth Circuit precedent. *See id.* at 161 (Adams, J., concurring) ("I reject the apparent conclusion by the majority that § 230.30 does not authorize a direct action against the insurer where the motor carrier has an Oklahoma license.").

Finally, the policy reasons for vesting a right in the injured party against the motor carrier's insurer are present here. First, unlike the motor carrier in *Fierro*, J.B. White holds an Oklahoma motor carrier license and therefore presumably has an insurance policy on file with the OCC. *See* Okla. Stat. tit. 47, § 230.30(A). Second, even among interstate carriers, a Form E certification of insurance is required, indicating that there is at least some compulsory component to the insurance requirements applicable to non-resident interstate motor carriers. *See Tidmore*, 646 P.2d at 1281-82 (explaining two policy reasons for permitting joint liability). Therefore, the Court declines to extend *Fierro*'s holding beyond its precise facts – cases in which the interstate motor carrier had no Oklahoma license. The Court follows prior case law, which does not seem to draw a distinction between interstate and intrastate travel for those motor carrier holding an Oklahoma license. Therefore, Nationwide's motion for summary judgment is DENIED.

## IV. Conclusion

Plaintiffs' Motion to Amend Complaint (Doc. 15) is GRANTED in its entirety, and Plaintiffs shall file their Amended Complaint no later than February 6, 2012. Plaintiffs' Motion for Leave to Supplement Motion to Amend Complaint (Doc. 36) is GRANTED. Defendant Nationwide Mutual Insurance Company's Motion for Summary Judgment (Doc. 16) is DENIED. Defendant Nationwide Mutual Insurance Company's Motion for Protective Order (Doc. 17) is DENIED.

**ORDERED THIS 1st day of February, 2012.**

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**